May it please the Court, I'm Assistant Federal Defender Tanya Mora, representing the talent in this matter. I'd like to begin by reminding us of the relevant quote from the Supreme Court's decision in Wren, which was that for the run-of-the-mine case, which the Wren case was, we think there is a realistic alternative, excuse me, there's not a realistic alternative to the traditional common law rule that probable cause justifies a search and seizure. In other words, the case presents, in a case presents, an extraordinary, unusual, or polished traffic stop, the officer's motivation is relevant, and the traffic violation is not enough, in and of itself, to justify the search and the seizure. How do we tell the difference between a run-of-the-mine or run-of-the-mill, as the expression often is, traffic stop from an unusual traffic stop? What are the hallmarks, and how would one decide that? I think the totality of the circumstances test is what's applicable. That's the jurisprudence for determining whether there's reasonable suspicion or whether there's probable cause. And so, each case is going to rest on its own facts. In this case, we've got approximately, I listed nine specific elements to the plan that was put in place for this stop. And in fact, the place of the stop was so important, because that's where the drug dog was, that the officers ignored prior speeding violations, prior to Mr. Ibarra arriving in Medford at the 55-mile-an-hour area where the troopers stopped him. Is there any Supreme Court authority for the proposition that there's a difference between pretext and really, really a lot of pretext? In other words, presumably some kind of pretext is okay if there's actually a violation that occurs in the officer's presence. I don't think that they've looked at various levels of pretext. Pretext is a pretext. They had a motivation to stop it for some other reason. What's important is whether this is the normal kind of stop. But isn't there a sort of a, or maybe I'll just phrase this neutrally, is there a transcendent principle that if there are objective grounds that justify a stop, that we then can't really look at subjective motivations of the officers in determining whether the Fourth Amendment is satisfied? Or stated another way, is there a transcendent principle that if objective grounds that exist would permit the stop, that we don't look at motivation or pretext? I thought that's what the Supreme Court had said, and that they carved out if there was something unusual about the way the stop was handled. You know, like if they were rough with the people or abusive in some way. So tell me what I'm missing. Well, Your Honor, the Supreme Court, prior to making this finding that the pretext is okay in the normal traffic stop, they reviewed their case law as it relates to the inventory and administrative searches. And in those cases, they didn't retreat from the idea that you have to have, that pretext can invalidate an administrative and an inventory search, because those searches are not based on probable cause. So the pretext, the idea that pretext can still invalidate a search and seizure is still alive. What they said was that in the limited circumstances where you've got the normal traffic stop, we don't need to look at motivation, we don't need to look at whether pretext in and of itself will not invalidate the search. That's all they said, though. In fact, they really reaffirmed the district court's holding in Wren, which was that, as they related early in the opinion, which was that the district court found no facts to demonstrate that the actions of the officers were contrary to a normal traffic stop. So I think we have to take heed from the language of the opinion, and I think there's clear intent that this idea that pretext will not in and of itself invalidate a traffic stop is based on where it's the typical normal traffic stop, not in this case. I thought they were focused on the actions of the officers, like what they did when they stopped the person, as opposed to focusing on what the officers were thinking about. Well, I don't see that in the case. What happened in that case was merely that the officers had identified three or four traffic violations, and the officer approached the vehicle, looked inside, and discovered additional information that would justify the seizure of the driver in the vehicle. By the way, where does this phrase, run of the mine? I've heard of run of the mill, but run of the mine, it's like maybe it's a gap in my education. It's interesting, because I went to the Underbridge Dictionary, and there's two versions of the term listed. One is one that's not hyphenated. The court used the version that is hyphenated, and it specifically refers to, well, I have a list somewhere, but the opposite terms from extraordinary, unusual, and polished. Crude and unrefined are some of the terms it uses. It's the chunks of ore, I guess, that come out of the mine. That's right, and then it refers to run of the mill. But wait, it's clearly what run of the mine means? I've got to assume the Supreme Court knows what they're saying. I believe they might. I believe they might have looked at the distinction. Let me see if I can find it in my notes where I looked at the definition the other night again. It means crude. It does have to do with ore. It does have to do with ore, and I'm not able to find the exact list of adjectives. So if it's a crude, unrefined, ordinary, mediocre, and then it says run of the mill. That's in the Underbridge Dictionary that I looked at. The other thing is that besides the detailed plan that was listed on page four, the nine elements of it, we also have the fact that there was a dog involved in this case, and I think using a pretext to apply a dog is like using an inventory search as a ruse for an investigation. Motivation, as I mentioned, motivation is still a – and pretext is still an issue that can invalidate, and the use of a dog is an intrusion. How do you deal with the place case? Well, I believe what place says is that when we've got luggage going through an airport, the application of the dog is not a search. It's a thing unto itself. I think the fact that in the basis of place is that you don't have a privacy interest in contraband. Well, that holding is undermined by Kylo now where we've got – Kylo really is very specifically about homes and the special place that homes have in our jurisprudence. I understand, Your Honor, that there is that distinction. We still have a reasonable expectation of privacy in our vehicles, and what the important thing is is that the place rationale is based on the fact that you don't have an interest in contraband. So if the police had enough trained dogs that there were dogs at every traffic stop, would that be okay or not okay in your view? There is the border search situation, and we apply a different type of balance. No, my hypothetical was if they had enough dogs to ride in every police car, in every sheriff's car, and there were a dog at every traffic stop, would that be okay under Supreme Court rationale? No, Your Honor, I don't believe it is. I think we still need some articulable basis for which to apply the intrusion, the drug application to any container, whether it's a vehicle or anything else. See, we can't anticipatorily overrule the Supreme Court's decision. You might want to preserve an issue to take it to the Supreme Court, but we have to accept place. Is that the name of it? Your case is Supreme Court. No, and a whole bunch of other cases where the Supreme Court has said to us it's up to us to overrule our own precedent, and a panel of our court, even an in-bank court, can't go a different direction by saying the Supreme Court's more recent case undermines an older case. I understand, Your Honor. And what I'm saying is that the application of the dog is just another factor that makes this traffic stop not a run-of-the-mind stop. Alternatively, I've argued that the scope of the stop was also improperly expanded with the application of the dog because the officers learned no additional information prior to immediately sticking the dog on the vehicle at the stop. And so that intrusion, I've argued, there needs to be reasonable suspicion or probable cause for that, and that was an alternative argument. I'd like to take 25 seconds ahead for rebuttal. Yes, you may do that. Thank you. Ms. Harper? This court should uphold Judge Hogan's ruling that the motion to suppress should be denied in this case. And first of all, I don't know that the court really needs to analyze this case under Wren. Judge Hogan found that given the facts, the background of the DEA's investigation starting in Tacoma, that there was reasonable suspicion to believe that this vehicle did contain contraband or drugs, and that was the valid basis for the stop. And then if there is reasonable suspicion to stop the vehicle based on that prior investigation, the drug dogs walk around the outside of the vehicle, which, as the court said, is low-established case law. That established probable cause for law enforcement to search the entire vehicle. They could search every nook and cranny, and we don't have to get to the defenses. The scope of the search goes beyond the consent. So just based on the reasonable suspicion plus the drug dog alert to the back of the vehicle, we get to probable cause to search, which allows the officers to find the $22,000 cash that was in the console and also allows the officers to search to the extent that they pulled back the seat, the passenger's seat, and was able to find that underneath the passenger's seat had appeared to be tampered with, such that when they moved the carpeting back, they could find the approximately $14,000 that was hidden in that carved-out portion of the car. So, Ms. Harper, do you have a question in your mind whether Wren applies, whether this is a run-of-the-mine case? I think if the court wants to look at this case from the perspective, I don't think you need to get to Wren. Yeah, you said that, but let's assume that we want to analyze it under that. Sure. Well, one of the things that I thought was interesting about Wren, first of all, is that there's nothing in Wren to indicate that if an officer has a broader base of knowledge, that automatically a case is no longer run-of-the-mine. And what I thought was really interesting about Wren was where in the case we hear that term run-of-the-mine for the first time, for the first and only time, and it was the second paragraph to the end. And it was right after the petitioners were arguing that, hey, there are so many traffic infractions out there that law enforcement could find a traffic violation to back up any stop that they chose to make. And the court right after that said, we are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that an infraction itself can no longer be ordinary, an ordinary measure of the lawfulness of enforcement. And basically, we weren't going to take that stand. And then right after that, the court says for the run-of-the-mine case, which this surely is, we see no realistic alternative in applying standard probable causes. If run-of-the-mine means, as Ms. Morrow argued, like something ordinary, like, you know, you might get some ore from the mine that was really rich and some that was really poor, but the run-of-the-mine would be like what was ordinary. So is this case with the plan to stop the driver in Medford and have the dogs there? Is this an ordinary traffic stop, then, if that's the test? In other words, is that test essential to the holding in Medford? I don't think that's the test. The trouble is that we don't know what run-of-the-mine refers to. And it's the government's position, based on this paragraph before, and as the court, I think, was stating, that run-of-the-mine applies to the type of infraction that we have. It's just a run-of-the-mill type of traffic infraction, which we have here. A speeding violation and then a violation where the officer observed the defendant go just across the solid line. And it's the government's position that the court is referring back to the type of traffic infraction we have here. It's not referring to the fact that an officer may have a particular basis of knowledge that is more expanded based on a particular defendant who they want to stop. And interestingly, I thought in United States v. Wallace, which was a case that was cited by defense counsel, that was a case where the officer, I believe, had been informed by DEA that they thought that this was a load car for marijuana, I believe. And the officer was searching for a reason to stop the car. And the officer originally thought that he or she was going to stop the car based on a, it was a car tag. And then the tags weren't expired, so the officer stopped the car because of the tainted window. And the court applied REN in that case and never said, well, this is a non-run-of-the-mine case, but REN automatically is going to kick it out because law enforcement has some sort of expanded knowledge based on that. So I don't think anywhere REN stands for the principle that we're not going to apply it unless the law enforcement officer has some expanded knowledge base. Are there other cases apart from REN that stress that in assessing the Fourth Amendment, we look at objective circumstances and not subjective intentions? Would you repeat that? Yeah, are there cases other than REN that suggest that in assessing probable cause, we're supposed to look at the objective circumstances, not at subjective motivations of officers? I think there are cases out there that say that. But I think the whole, the REN's line of reasoning is based on the fact that we can't look at an officer's subjective intentions in each specific circumstances related to a stop and try and say what's ordinary or what is the standard in the community. And the court in REN was just saying we can't do that in every case. We just have to say if there is a traffic stop that's based on a traffic violation, we're going to hold that the officer's motives are the issue. Okay. So I think that even if the court does want to apply REN, that this case isn't what the court was anticipating as a non-right in line case. And then if we apply REN and the court is going to say that the court wants to look at the drug dog issue, again, I don't think the court needs to get there, but if we do need to look at the drug dog issue, I don't think the Kylo case would overrule the long line of cases which say that dog alerts on the outside of luggage, warehouses, cars are not a search. And basically, I agree with the court that one of the differences in the Kylo case versus this case is you have a heightened expectation of privacy in your home. And the other thing I think which sets Kylo apart from the drug dog type cases is that in Kylo involved thermal imaging, which is a sense-enhanced technology that is something new, basically, a new and improved. Well, vis-a-vis humans, dogs are a sense-enhancing technology, too. That's correct, Your Honor. And I think as the court said in the United States versus Place, though, it's really hard to label a drug dog. And I think the court said in Place that this is sui generis. This dog is something we've relied on, and it's just this thing apart from itself. As interesting as this is, you know, Place versus Kylo, isn't it just outside of our responsibility under the Supreme Court's precedence that say we can't anticipatorily overrule a Supreme Court precedent based on the theory that it's been undermined by a later case? I think so. So why do we have to even address that? I don't think the court needs to. I mean, wouldn't it be wrong? As opposed to we don't need to, aren't we prohibited from addressing whether Kylo undermines Place? I think that's true, Your Honor, because Place is there as part of the record. You and Ms. Morrow can go argue that one to the Supreme Court, and I think they'll be very interested, at least as one member of this panel. I think that issue is a total waste of time of the panel. I'd rather learn what a run-of-the-mind stop is. I'll tell you, I think run-of-the-mind stop applies to the facts indicating, the facts that the trooper or officer knows about that is the basis of a traffic violation. Although, like I said, nowhere in Wren does it really define what run-of-the-mind means or talk about what run-of-the-mind applies to. Does it apply to all the background facts, or does it apply to just the traffic stop? And I think that because of the place in which it comes into that paragraph before the end of the Wren case, the court's saying it applies to just the regular traffic code violation because that's what the court's talking about in the prior paragraph. Is there any place in Wren where the Supreme Court has language where they say, we hold such and such, and they use that kind of language in describing the need to look at objective factors rather than subjective intentions? Because I'll take another look at it, but I thought that there was language in that case that suggested that. You don't have to use up your argument. I believe there was a portion of the Wren case that says that the court held that an officer's decision to stop a vehicle is reasonable if there's probable cause, regardless of the officer's motives. And then there's a portion that says subjective intentions play no role in the ordinary Fourth Amendment analysis. I don't know if the court says it's part of their whole language after what you stated. Okay. Thank you. You have half a minute or so for rebuttal. I anticipated that you might think that you were not able to address the dog issue, but I would like to say quickly that the dog issue was dicta. In the city of Indianapolis, the dog issue was dicta. You can easily distinguish place dealt with the application of the dog to luggage. This is a traffic stop, and so you can certainly distinguish place. Real quickly, the standard for reasonable suspicion is the historical facts that led up to the traffic stop, and then based on the objective reasonable police officer kind of standard. So it is objective. The district court had to get to rent. The findings are clear from the district court that there was not reasonable suspicion to stop this vehicle. So we do need to address the issue. Thank you. Thank you, counsel. The case just argued is submitted. We appreciate some very interesting arguments.
judges: Hall, Graber, Gould